# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| LONNIE LEE ANGEL, JR., | ) | |
| | ) | Case No. 1:20-cv-74 |
| *Petitioner*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Susan K. Lee |
| SHAWN P. PHILLIPS, | ) | |
| | ) | |
| *Respondent*. | ) | |

## MEMORANDUM OPINION

Now before the Court is Petitioner's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, a state prisoner, challenges his conviction for second-degree murder arising from an attack on Donny Lawson ("the victim") [Doc. 1]. Respondent filed a response in opposition to the petition [Doc. 12] and the state-court record [Doc. 11]. Petitioner filed a reply [Doc. 13]. After reviewing the relevant filings and the state-court record, the Court finds that Petitioner is not entitled to habeas corpus relief under § 2254. Accordingly, no evidentiary hearing is warranted, *see* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the habeas corpus petition will be **DENIED**, and this action will be **DISMISSED**.

## I.     BACKGROUND

Evidence at Petitioner's trial suggested that, at a cookout Petitioner held in his barn, Preston Parker[1] violently attacked the victim in the presence of Petitioner and others; the attack occurred

---

[1] A Bledsoe County Grant Jury indicted Petitioner, Preston Parker, Ray Tullos, and Clinton A. Watson (referred to as Allen Watson at Petitioner's trial) for various charges arising out of the attack on the victim [Doc. 11-1 p. 9–13]. But Petitioner proceeded to trial alone [Docs. 11-5, 11-6, 11-7, 11-8].

1

after Preston Parker asked the victim whether he had killed Clyde Angel, Petitioner's uncle, and the victim responded, "What if I did?" [Doc. 11-5 p. 52, 57–58, 61–64, 66–68, 70–71]. Allen Watson also kicked the victim "once or twice," and Ray Tullos attacked the victim with a big beer bottle, a pair of boots, and a posthole driver, and possibly urinated on him, all while the victim was on the ground [*Id.* at 73–79, 83].

Preston Parker testified that Petitioner also kicked the victim [Doc. 11-5 p. 77]. And Preston Parker's nephew, Dalton Parker, testified that he saw Petitioner hit the victim "with the bottle and boots" and kick him [Doc. 11-6 p. 117, 121]. However, P.J. Parker, Dalton Parker's cousin who was also in the barn with Dalton Parker during the altercation, testified that he did not see Petitioner do anything to the victim [Doc. 11-7 p. 95–102].

Mark Sherman, another person who attended the cookout, testified that, while Preston Parker was kicking and hitting the victim, Mr. Sherman told Petitioner that the victim needed an ambulance, at which point Petitioner told Preston Parker "Preston, that's enough. The man's in a coma now" [Doc. 11-6 p. 24–25]. Preston Parker and Dalton Parker further testified that, while the victim was still breathing, Petitioner took out a pistol and talked about shooting the victim and hauling him to a rock crusher before Petitioner's father entered the barn and told Petitioner and the others to stop [Doc. 11-5 p. 77–80; Doc. 11-6 p. 121–22]. Petitioner, a very large man who stated, "ain't nobody going nowhere," at an unspecified point during the incident, then prevented his father and others from leaving the barn "for a long time" [Doc. 11-5 p. 72–73, 80–81, 111–13; Doc. 11-7 p. 32].

After Petitioner's father eventually left Petitioner's residence, he called 911 and said "[t]hey've beat him to death" [Doc. 11-6 p. 52]. Police and an ambulance responded, and medical personnel attempted to provide aid to the victim [Doc. 11-6 p. 52, 99, 110–11; Doc. 11-7 p. 10–

11, 12–16].  Nonetheless, the victim died due to his head injuries [Doc. 11-6 p. 88–91, 87; Doc. 11-7 p. 17].

## II.     PROCEDURAL HISTORY

A jury convicted Petitioner of second-degree murder based on the evidence presented at his trial regarding his role in this incident, the Tennessee Criminal Court ("TCCA") affirmed this conviction, and the Tennessee Supreme Court denied review.  *State v. Angel*, No. E2014-00732-CCA-R3-CD, 2015 WL 2393972 (Tenn. Crim. App. May 18, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015) ("*Angel I*").  Petitioner then filed a petition for post-conviction relief that the post-conviction court denied, and the TCCA affirmed that denial.  *Angel v. State*, No. E2018-01551-CCA-R3-PC, 2019 WL 6954186 (Tenn. Crim. App. Sept. 2019) ("*Angel II*").  Petitioner then filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254, claiming that his trial counsel was ineffective, the evidence was insufficient to support his conviction, and the trial court violated his due process rights by not allowing him to subpoena witnesses at his post-conviction hearing [Doc. 1].

## III.    STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et seq.*, a district court may not grant habeas corpus relief for a claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

3

The § 2254(d) standard is difficult to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the state court's factual findings unless the petitioner rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## IV.  ANALYSIS

### A.  Sufficiency of the Evidence

Petitioner claims that the evidence was insufficient to support his second-degree murder conviction [Doc. 1 p. 34–36]. In its opinion affirming this conviction, the TCCA described the elements of a second-degree-murder conviction and the theory of criminal responsibility under Tennessee law as follows:

> [S]econd degree murder is the "knowing killing of another." T.C.A. § 39–13–210(a)(1). "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39–11–401(a). Additionally, criminal responsibility for the actions of another arises when the defendant, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, ... solicits, directs, aids, or attempts to aid another person to commit the offense." *Id.* § 39–11–402(2); *see State v. Lemacks,* 996 S.W.2d 166, 170 (Tenn.1999) ("As reflected in this case, criminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may prove the defendant's guilt of the alleged offense ... based upon the conduct of another person.").

*Angel I*, at *4.

The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling rule for Petitioner's claim challenging the sufficiency of the evidence to support his second-degree-murder conviction. *See Gall v. Parker*, 231 F.3d 265, 287–88 (6th Cir. 2000), *superseded on other grounds Parker v. Matthews*, 567 U.S. 37 (2012). In *Jackson*, the

4

Supreme Court held that the evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. In making this determination, the district court may not "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

A habeas court reviewing the sufficiency of the evidence must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). First, under *Jackson*, the court gives deference to the verdict "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16); *see also Cavazos v. Smith*, 565 U.S. 1, 6–7 (2011) (providing that "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution'") (quoting *Jackson*, 443 U.S. at 326). The habeas court must give additional deference to the state court's consideration of the verdict under the AEDPA's highly deferential standards. *Cavazos*, 565 U.S. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). As such, a petitioner challenging the evidence against him "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

Petitioner raised a claim challenging the sufficiency of the evidence to support his second-degree-murder conviction in his direct appeal to the TCCA, which addressed it as follows:

> When an accused challenges the sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, *see* Tenn. R. App. P. 13(e); *Jackson v.*

5

*Virginia,* 443 U.S. 307, 324 (1979), regardless whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence, *see State v. Dorantes,* 331 S.W.3d 370, 381 (Tenn.2011) ("[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence."). Especially inimical to the defendant's claim is the well-rooted axiom that the appellate court neither re-weighs the evidence nor substitutes its inferences for those drawn by the trier of fact. *State v. Winters,* 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003). Also, the credibility of the witnesses, the weight and value of the evidence, and all other factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Importantly, we afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

\*      \*      \*

In this case, the evidence adduced at trial, examined in the light most favorable to the State, established that [Preston] Parker attacked the victim after the victim intimated that he may have had a hand in the death of Clyde Angel, a relative of both [Petitioner] and [Preston] Parker. [Petitioner] and [Preston] Parker were both angered by the victim's suggestion that he had played a role in the death of Clyde Angel. [Preston] Parker beat the victim into unconsciousness. Over the next few hours, [Petitioner], [Preston] Parker, Mr. Watson, and Mr. Tullos, all of whom had been drinking, struck and kicked the victim while he lay unconscious and bleeding on the floor of the defendant's barn. [Preston] Parker testified that the defendant kicked the victim "once or twice," discussed "[h]auling [the victim] off to the rock crusher," and "had a pistol out [and] was going to shoot [the victim]." [Dalton Parker] testified that the defendant kicked the victim and hit him "with the bottle and the boots." [Dalton Parker] also testified that the defendant aimed a gun at the victim and "said he was going to kill him and put him in the rock crusher." For at least some period of time, the defendant refused to allow anyone to leave the barn, indicating that he had some measure of control over the men. Mr. Sherman testified that during the attack, he told the defendant, "Lonnie, the man needs an ambulance," and the defendant responded by shouting at [Preston] Parker, "Preston, that's enough. The man's in a coma now." This evidence showed that the defendant, who towered over the other men, was able to, at least briefly, forestall the attack on the victim and that he, despite being aware of the gravity of the victim's condition, rejected the invitation to obtain medical treatment for the victim. The photographs attest to the savagery of the victim's murder. Evidence that the defendant struck and kicked the victim, that the defendant threatened the victim's life, that the defendant apparently exercised a degree of control over the situation, and that he refused medical treatment to the victim, particularly in light of the brutality of the attack and the victim's obvious distress, clearly established that the defendant acted with the intent to promote or assist in the knowing killing of the victim. Thus, the evidence was sufficient to support the defendant's conviction of second degree murder.

Case 1:20-cv-00074-TRM-SKL   Document 19   Filed 11/23/21   Page 6 of 25   PageID #: 1357

*Angel I*, at *4.

The TCCA correctly found that the evidence was sufficient to support Petitioner's second-degree-murder conviction. In his habeas petition, Petitioner asserts that the evidence was insufficient to support the jury's finding that he knowingly killed the victim, as Tennessee's second-degree-murder law requires [Doc. 1 p. 36]. In support of this assertion, Petitioner emphasizes that Preston Parker pled guilty to second-degree-murder for his role in the incident and testified that he had been drinking all day on the day of the incident, that he and Mr. Tullos attacked the victim, and that Petitioner "kicked [the victim] once or twice" [*Id.* at 37]. Petitioner argues that Dalton Parker was the only other witness who testified that Petitioner attacked the victim in any way, specifically that Petitioner kicked him and "hit [the victim] with a bottle and boots" [*Id.* at 37]. But Petitioner asserts that no physical or forensic evidence linked him to the victim's death, and that P.J. Parker, a defense witness who was with Dalton Parker in the barn, contradicted Dalton Parker's testimony "on each point" [*Id.*].

However, Preston Parker and Dalton Parker's testimony supported a reasonable jury finding that, after Preston Parker attacked the victim and left him on the floor, Petitioner kicked the victim and hit him with objects, and this Court will not reweigh evidence. Also, other evidence showed that Petitioner did not seek medical care for the victim despite his actions and his appreciation for the victim's desperate circumstances. Instead, Petitioner took out a gun, discussed disposing of the victim's body while the victim was alive, and kept people from leaving the scene.

Accordingly, viewed in the light most favorable to the prosecution, the evidence at Petitioner's trial established that he contributed to the victim's injuries, appreciated the victim's dire situation but did not attempt to obtain assistance for the victim or allow others to do so, and spoke of disposing of the victim, which is sufficient to allow a reasonable jury to find that

7

Petitioner intentionally promoted or assisted his co-defendants in the commission of the second-degree-murder of the victim such that Petitioner is criminally responsible for the acts of his co-defendants, and that Petitioner is therefore guilty of second-degree-murder under Tennessee law. *State v. Whitmore,* No. 03C01-9404-CR-00141, 1997 WL 334904, at *5–6 (Tenn. Crim. App., June 19, 1997) (finding that where the evidence showed the defendant (1) prepared for and participated in the burglary during which the injuries occurred, (2) did not attempt to assist the victim despite knowing of his injuries, and (3) disposed of evidence, it was sufficient to support the jury finding the defendant guilty of first-degree-murder and criminally responsible for his co-defendant's actions). Thus, the TCCA properly applied *Jackson* and determined that the evidence was sufficient to support Petitioner's second-degree-murder conviction.

Accordingly, Petitioner has not met his heavy burden to establish that the TCCA's denial of his claim challenging the sufficiency of the evidence to support his second-degree-murder conviction was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and he is not entitled to § 2254 relief for this claim.

## B.  Ineffective Assistance of Counsel

In his § 2254 petition, Petitioner also asserts many claims for ineffective assistance of trial counsel, specifically asserting that his trial counsel was ineffective for:

(1)     Failing to ensure that Petitioner could adequately hear his trial proceedings;

(2)     Cross-examining the emergency medical technician regarding Petitioner trying to provide aid to the victim despite not interviewing this witness prior to trial;

(3)     Failing to show Petitioner discovery materials from compact discs;

(4)     Failing to introduce records of Dalton Parker's prior inconsistent statement to impeach his testimony;

(5)     Failing to introduce evidence that the firearm Petitioner pulled out during the incident underlying the trial was in unusable condition;

8

<div style="padding-left: 2em;">

(6)    Failing to object to damaging state witness testimony and prejudicial statements from the prosecution;

(7)    Failing to assert that the evidence showed that Preston Parker's testimony was in return for a favor; and

(8)    Failing to request continuance of the trial so that Eugene Ward could testify in favor of the defense

</div>

[*Id.* at 16–33]. Petitioner also claims that the cumulative effect of these errors entitles him to relief [*Id.* at 16, 33]. However, for the reasons set forth below, Petitioner procedurally defaulted all but four of the ineffective-assistance-of-trial-counsel claims in his § 2254 petition, has not shown cause or prejudice to overcome that default, and is not entitled to habeas corpus relief for his exhausted claims.

## 1. Procedural Background

After the conclusion of his direct appeal of his conviction in his state criminal proceedings, Petitioner filed a pro se petition for post-conviction relief with the state court claiming that the trial judge denied him a fair and impartial trial, his trial and appellate counsel were ineffective, and the prosecution violated his right to a fair trial and due process [Doc. 11-16 p. 3–24]. Petitioner included the following ineffective-assistance-of-counsel claims in his petition for post-conviction relief, all of which he also raises in his petition for § 2254 relief:[2]

<div style="padding-left: 2em;">

(1)    Counsel was ineffective for not allowing Petitioner to review the discovery on compact discs;

(2)    Counsel was ineffective for not ensuring Petitioner could adequately participate in his trial through the use of hearing aids;

(3)    Counsel failed to impeach Dalton Parker with prior inconsistent testimony;

</div>

---

[2] Petitioner filed many other ineffective-assistance-of-counsel claims in his pro se petition for post-conviction relief [Doc. 11-16 p. 15–20]. However, the Court only lists those claims he also brings in his § 2254 petition herein for purposes of judicial efficiency.

<div style="text-align: center;">9</div>

(4)    Counsel failed to establish that the firearm that the prosecution asserted Petitioner used in the incident "was not a useable firearm in its current condition";

(5)    Counsel "failed to show that [Preston] Parker received favorable treatment from the State in exchange for his testimony";

(6)    Counsel failed to object to the prosecutor's argument that the defense "'could do nothing'" if the state failed to prove Petitioner guilty;

(7)    Counsel failed to object to the prosecutor's statement that Preston Parker, Mr. Tullos, and Mr. Watson all were charged, as the cases were severed;

(8)    Counsel failed to call Donald Eugene Ward as a witness at trial;

(9)    Counsel failed to "put[] the state to their case" and allowed the prosecutor to testify for Evalee;

(11)    "[C]ounsel was ineffective for allowing the prosecutor to argue that Petitioner[,] much like the devil, had evil people, not preachers and teachers[,] hanging out at his place doing 'this type of stuff to this man'";

(12)    Counsel failed to object to the prosecutor commenting that the co-defendants were Petitioner's friends, as no evidence supported this assertion;

(13)    Counsel failed to object to the prosecutor's statement that Petitioner deserved the same punishment as Preston Parker; and

(14)    Counsel failed to object to the prosecutor's assertion that "Petitioner pulled a gun and threatened everyone to keep them from leaving."

[*Id.* at 16–20]. Petitioner also alleged that the cumulative effect of all his claims for post-conviction relief entitled him to relief [*Id.* at 23], and his appointed counsel later filed a supplemental claim that a court officer had a conflict of interest [*Id.* at 35].

Additionally, while Petitioner did not raise a claim that his trial counsel erred in his cross-examination of the medical technician in his post-conviction petition, his trial counsel raised the issue without prompting in his sworn testimony at the evidentiary hearing [Doc. 11-18 p. 45–46]. Specifically, trial counsel stated that, in the discovery phase of Petitioner's trial, he felt that the

10

medical technician's testimony would be very neutral, and he did not interview this witness [*Id.* at 45]. Trial counsel further testified that, at trial, he felt that the medical technician's direct examination testimony was neutral [*Id.*]. But Petitioner then remembered that he had attempted to help the medical technician with the victim and therefore asked that trial counsel cross-examine this witness about that issue [*Id.*]. Trial counsel responded to this request by telling Petitioner that he had not interviewed the medical technician and the medical technician's testimony had not hurt Petitioner's case, but Petitioner insisted that trial counsel question the medical technician about that issue [*Id.*]. And as trial counsel believed that he should honor such requests from clients that were intelligent and articulate and could help with trial tactics, he complied with that request, which resulted in the medical technician testifying unfavorably about Petitioner's behavior during the medical technician's attempts to aid the victim [*Id.* at 45–46]. Trial counsel felt that this unfavorable testimony "hit the jury wrong," that the jury no longer was interested in what he "had to say," and "[he] never got them back" [*Id.* at 46]. Trial counsel therefore opined "that was my decision to make, it was not the right one, and perhaps [Petitioner] should have some relief" [*Id.*].

After the trial court denied Petitioner's petition for post-conviction relief, he raised the following claims for ineffective assistance of counsel in his appeal of that decision to the TCCA:

(1)    Trial counsel's failure to ensure he could hear the trial proceedings was ineffective assistance that denied him his due process right to meaningfully participate in trial;

(2)    Trial counsel's cross-examination of the medical technician was deficient and prejudicial;

(3)    Trial counsel's failure to show Petitioner pretrial discovery from compact discs was ineffective assistance; and

(4)    The cumulative effect of trial counsel's errors entitled Petitioner to post-conviction relief.

[Doc. 11-19 p. 21–24].

## 2. Procedurally Defaulted Claims

As set forth above, in his § 2254 petition, Petitioner seeks relief for many ineffective-assistance-of-counsel claims he raised in his state court post-conviction petition but not in his appeal of the denial of that petition. However, Petitioner procedurally defaulted all ineffective-assistance-of-counsel claims that he did not raise in his appeal of the denial of his post-conviction petition and has not shown cause or prejudice to overcome that default. Thus, the Court will only address the merits of the ineffective-assistance-of-counsel claims Petitioner raised with the TCCA.

Before a federal court may grant habeas relief to a state prisoner, he must exhaust his available state court remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires the prisoner to "fairly present" each claim to all levels of the state appellate system by presenting the "same claim under the same theory," *Wagner v. Smith*, 581 F.3d 410, 414, 418 (6th Cir. 2009), to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

On federal habeas review, the district court may review a procedurally defaulted claim only when the prisoner can show cause for the default and actual resulting prejudice, or that failure to address a claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991); *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977). A petitioner may establish "cause" by showing some objective external factor impeded his counsel's ability to comply with state procedural rules, or that trial counsel rendered ineffective assistance. *Coleman*, 501 U.S. at 753–54. And the prejudice required to overcome a default must be actual, such that the error must have "worked to [Petitioner's] *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Also, a fundamental miscarriage of justice occurs "where a constitutional violation has probably resulted in the conviction of one who is actually

12

innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Thus, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In this context, actual innocence "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Errors of post-conviction counsel generally are not "cause" to excuse a procedural default. *Coleman*, 501 U.S. at 752–53. However, the Supreme Court established an equitable exception to this rule in *Martinez v. Ryan*, where it held that the inadequate assistance of post-conviction counsel or the absence of such counsel may establish cause for a prisoner's procedural default of an ineffective-assistance-of-counsel claim under certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). The Supreme Court has described the *Martinez* exception as follows:

> [The exception] allow[s] a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim;" and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez*, 566 U.S. at 13–14, 16–17). This exception applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 792–95 (6th Cir. 2014). However, *Martinez* does not excuse a petitioner's default of claims that he raised in his post-conviction petition but not in his appeal of the denial of that petition. *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply to claims because they "were raised and rejected on the merits by the initial postconviction court, and ineffective

13

assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals").

Petitioner procedurally defaulted his claims for ineffective assistance of counsel that he raised in his post-conviction petition but failed to raise in his appeal of the denial of that petition to the TCCA. Moreover, while Petitioner makes a general assertion in his reply that he "does claim his innocence" to attempt to excuse that procedural default [Doc. 13 p. 4], he does not cite any exculpatory evidence in the record to support this conclusory statement.[3] And while Petitioner also states in his reply that he relies on *Martinez* to excuse his procedural default [*Id.*], he raised his defaulted claims for ineffective assistance of counsel in his initial post-conviction petition and defaulted them in his post-conviction appeal, and thus *Martinez* does not excuse that default. *Id.*

Accordingly, Petitioner's only ineffective-assistance-of-counsel claims that are properly before this Court such that the Court will review them on the merits are as follows:

(1)     Trial counsel failed to ensure that Petitioner could hear the trial proceedings;

(2)     Trial counsel's cross-examination of the medical technician was deficient and prejudicial;

(3)     Trial counsel's failure to show Petitioner discovery from compact discs was ineffective assistance; and

(4)      The cumulative effect of trial counsel's errors entitle Petitioner to relief.

As such, the Court will now address each claim in turn, after setting forth the applicable standard of review and the TCCA's summary of the relevant evidence from the evidentiary hearing.

### 3. Exhausted Ineffective-Assistance-of-Counsel Claims

#### a. Standard of Review

---

[3] Notably, Respondent contends in his response that Petitioner admits his involvement in killing the victim in his petition [Doc. 12 p. 16 n. 2 (citing Doc. 1 p. 36–37)]. However, the Court does not read the relevant pages of the petition [Doc. 1 p. 36–37] as an admission of guilt.

14

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. A petitioner has the burden of proving ineffective assistance of his counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective-assistance-of-counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

15

The Supreme Court has emphasized that a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 69. Moreover, a habeas petitioner alleging ineffective assistance of counsel bears a heavy burden, given the "doubly deferential" review of a such a claim under § 2254(d)(1). *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

### b. Evidentiary Hearing

The TCCA summarized the evidence presented at the evidentiary hearing on Petitioner's petition for post-conviction relief in relevant part as follows:

> Counsel said that he met with the Petitioner several times at the jail and that the Petitioner provided information relative to whom counsel should interview. Although counsel did not recall the length of his and the Petitioner's meetings, he said that the meetings were "good productive conversations" and that they met approximately six times.

> Trial counsel testified that he requested and received the State's discovery package. He recalled that the package contained compact discs and that the Petitioner had problems viewing them at the jail. Counsel could not recall whether the issue was "satisfactorily resolved." He said that he and the Petitioner discussed the discovery materials but that he and the Petitioner did not review the discs together. Counsel said that he did not make the technology required to view the discs available to the Petitioner. Counsel did not recall what materials were on the discs. He was unsure whether "paper copies" of the materials were provided to the defense. He said he was confident the State did not present any evidence at the trial that was not contained on the discs.

> \*  \*  \*

> Trial counsel testified that he knew the Petitioner had significant hearing loss in one ear, possibly both ears. Counsel recalled that the Petitioner had difficulty with "that one ear" and that the acoustics inside the courtroom "were a problem for everybody," including counsel, the Petitioner, and the prosecutor. Counsel was unaware of whether the Petitioner was fitted with hearing aids before the trial, but he did not think the Petitioner had hearing aids during the trial. Counsel said that the Petitioner discussed the hearing loss, especially in one ear. When asked what efforts counsel made to the ensure the Petitioner could hear, counsel said that the Petitioner "seemed to be able to hear" and that they communicated effectively.

16

Counsel recalled a couple of incidents during the trial in which counsel had difficulty hearing witness testimony and in which the Petitioner told counsel what a witness had stated. Counsel said that he had no reason to believe the Petitioner had difficulty hearing and that if counsel had thought the Petitioner could not hear, counsel would have filed a motion for "assistance." Counsel did not recall the Petitioner's stating during the trial that the Petitioner could not hear. Counsel said that he would not dispute the Petitioner's allegation that prison personnel had denied him medical assistance before the trial related to his hearing.

\* \* \*

Trial counsel testified that testimony from the emergency medical technician was "very neutral" and that counsel did not interview the technician before the trial. Counsel said that the Petitioner recalled having attempted to help the technician with the victim and wanted counsel to question the technician about this. Counsel recalled telling the Petitioner that the technician's testimony had not hurt the defense, that counsel had not interviewed the technician, and that the Petitioner was "very insistent." Counsel said that he asked the technician if the Petitioner had assisted "with getting [the victim] some attention." Counsel recalled the technician's testifying that the Petitioner "kind of got in the way and almost knocked the man off the stretcher" and that the Petitioner told the technician "to get him out of here." Counsel said that this testimony was a "turning point" in the trial because it "hit the jury wrong." Counsel said that, afterward, the jurors were not "interested in a word" counsel said. Counsel said that if asking the question "was my decision to make, it was not the right one, and perhaps [the Petitioner] ought to have some relief."

\* \* \*

Trial counsel identified a letter from the Petitioner addressed to counsel and agreed that in the letter the Petitioner requested all of the discovery materials. Counsel said that the materials were provided to the Petitioner. Counsel said that although he and the Petitioner did not view the contents of the compact discs, he and the Petitioner discussed the contents. Counsel did not know whether the Petitioner saw the photograph evidence before the trial but said they discussed the photographs. Counsel did not seek to exclude any of the photographs before the trial. Counsel said that the chosen defense was that the Petitioner did not inflict the victim's injuries

\* \* \*

Counsel recalled that the trial court excluded some of the photographs depicting the victim's bloody head wound at the scene. Counsel said that the Petitioner was able to consult with him during the trial about the photographs.

Trial counsel testified that he and the Petitioner discussed everything contained in the discovery materials, regardless of whether the Petitioner saw the contents.

\*　　\*　　\*

Trial counsel testified that the Petitioner did not request hearing aids during the trial. Counsel said that although the Petitioner reported having hearing problems, everyone in the courtroom had difficulty hearing during the trial. Counsel said, though, that the difficulty hearing everyone experienced did not impact the outcome of the trial.

*Angel II*, at \*2–\*5.

### c. Petitioner's Ability to Hear Trial Proceedings

Petitioner first claims that his trial counsel failed to ensure that he could hear the trial proceedings despite having knowledge of Petitioner's hearing loss [Doc. 1 p. 20–21]. The TCCA denied this claim by stating as follows:

> The Petitioner asserts that trial counsel provided ineffective assistance by failing to obtain hearing assistance at the trial. However, the Petitioner did not testify at the post-conviction hearing about the extent of his hearing impairment and his alleged inability to hear the trial court proceedings. The only evidence related to the Petitioner's hearing came from trial counsel. Although counsel knew about the Petitioner's hearing difficulties, the Petitioner "seemed to be able to hear" during the trial. Counsel said he and the Petitioner were able to communicate effectively. Counsel recalled that the courtroom acoustics were problematic for everyone during the trial and that when counsel had difficulty hearing witness testimony, the Petitioner was able to tell counsel what the testimony had been. Counsel had no reason to think the Petitioner could not hear during the trial but would have filed a motion for "assistance" if the Petitioner had mentioned an inability to hear and to understand the trial court proceedings. The record supports the post-conviction court's determination that the Petitioner failed to show counsel provided deficient performance resulting in prejudice. The Petitioner is not entitled to relief on this basis.

*Angel II*, at \*6.

The TCCA properly found that Petitioner is not entitled to relief for this claim. Petitioner asserts in his § 2254 petition that he could not hear unspecified portions of his trial, including "most" of the witness testimony, because he had no hearing aids, and that he therefore could not provide input to or consult with his attorney or participate in and make "fundamental decision[s]" regarding his defense [*Id.*]. However, the record does not contain evidence of what portion(s) of the trial Petitioner could not hear, what input Petitioner would have provided if he had heard all of the trial, or what fundamental decisions Petitioner would have made regarding his defense that would have changed the outcome of his trial if he had heard all of the trial. Rather, the substance of the evidence in the record on this issue indicates that Petitioner's hearing loss did not hinder his ability to understand and assist his counsel during trial [*see, e,g,*, Doc. 11-18 p. 41]. As such, Petitioner has not established that his trial counsel's failure to ensure he had hearing aids at trial was deficient assistance of counsel that prejudiced him.

Accordingly, Petitioner has not established that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and he is not entitled to relief under § 2254 for this claim.

### d. Cross-Examination of Medical Technician

In his next ineffective-assistance-of-counsel claim, Petitioner asserts that trial counsel was ineffective for cross-examining the medical technician about Petitioner's attempts to assist with the victim [Doc. 1 p. 21–23]. The TCCA addressed this claim as follows:

> The Petitioner asserts that trial counsel provided ineffective assistance by cross-examining the emergency medical technician about the Petitioner's assisting the victim at the scene. However, none of the thirty-two ineffective assistance allegations contained in the petition for relief involve the cross-examination of the emergency medical technician. *See id.* § 40-30-104(d);40-30-106(d).
>
> However, trial counsel testified at the evidentiary hearing that the technician's general testimony was not favorable to any particular party but that the Petitioner

19

insisted counsel question the technician about the Petitioner's assisting the victim at the scene. When questioned, the technician testified that the Petitioner "kind of got in the way and almost knocked the man off the stretcher" and told the technician to get the victim "out of here." Counsel considered the technician's testimony a turning point in the trial. Although the technician's testimony was unfavorable to the defense, "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." *State v. Kerley*, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991); *see Adkins*, 911 S.W.2d at 347. The record supports the post-conviction court's determination that the Petitioner failed to show counsel provided deficient performance resulting in prejudice. The Petitioner is not entitled to relief on this basis.

*Angel II*, at *7.

The Court agrees with the TCCA that Petitioner is not entitled to relief for this claim. First, while Petitioner claims in his § 2254 petition that trial counsel was ineffective for not interviewing the medical technician before trial, he did not raise any such claim with the TCCA [*compare* Doc. 1 p. 22–23 *with* Doc. 11-19 p. 23], and thus he procedurally defaulted this claim and has not shown cause or prejudice to overcome this default.

Moreover, even if the Court could liberally construe Petitioner's relevant claim in his state court appellate brief to assert that trial counsel was ineffective for not interviewing the medical technician prior to cross-examining him at trial, Petitioner has not established that trial counsel's pretrial "investigation or lack thereof" of this witness was unreasonable, such that he would be entitled to habeas corpus relief. *English v. Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010). Specifically, trial counsel testified at the evidentiary hearing that, during the discovery phase of Petitioner's trial, he believed the medical technician's testimony would be neutral [Doc. 11-18 p. 45], and the record establishes that was a correct assessment as to the medical technician's direct examination testimony. And no evidence in the record suggests that, prior to trial, Petitioner told his trial counsel that he attempted to help the medical technician with the victim, such that trial counsel's failure to interview this witness about this potential basis for cross-examination prior to

trial could be deficient performance. Thus, the record does not support a finding that trial counsel's failure to interview the medical technician prior to trial was unreasonable under the circumstances.

Further, the record establishes that trial counsel decided to honor Petitioner's insistent request for cross-examination of the medical technician on this issue even though he had not interviewed the medical technician prior to trial because of his strategic assessment of Petitioner's ability to assist in his own defense, which this Court will not second-guess. *See Strickland*, 466 U.S. at 690–91 (noting that counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); *Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004) (holding that "strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation").

As such, Petitioner has not established that his counsel's actions with regard to the cross-examination of the medical technician were deficient or that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and he is not entitled to relief under § 2254 for this claim.

### e. Discovery Materials

Petitioner next claims that counsel was ineffective because he did not show Petitioner discovery contained on compact discs despite knowing that Petitioner could not view that discovery in the jail [Doc. 1 p. 23–24]. The TCCA stated as follows in denying this claim:

> The Petitioner alleges that trial counsel provided ineffective assistance by failing to show the Petitioner the discovery materials contained on the compact discs and that, as a result, he was unable to review the State's evidence against him.
>
> The compact discs containing the discovery materials were not received as an exhibit in the post-conviction court. This court will not speculate relative to the information contained on the discs. In any event, trial counsel testified that he requested and received the State's discovery package and that although the Petitioner had difficulty viewing the materials contained on the discs, counsel and the Petitioner discussed the discovery materials. Therefore, the uncontroverted

21

evidence reflects that counsel and the Petitioner discussed the contents of the discovery materials. Counsel likewise testified that the State did not present any evidence at the trial that was not contained in the discovery materials and that the Petitioner consulted with counsel during the trial about the photographs contained on the discs. The record supports the post-conviction court's determination that the Petitioner failed to show counsel provided deficient performance resulting in prejudice. The Petitioner is not entitled to relief on this basis.

*Angel II*, at *7.

Again, the TCCA properly found that Petitioner is not entitled to relief for this claim. In his petition, Petitioner characterizes his counsel's testimony at the evidentiary hearing as "never specifically answer[ing] whether he discussed the [discovery] information" contained on compact discs with Petitioner prior to trial, despite admitting that he knew Petitioner had difficulty viewing the discovery information on those discs [Doc. 1 p. 23]. Also, while Petitioner acknowledges that he saw the information from those discs during his trial, he claims that at that point, it was too late for him to refute it or provide counsel any reason to explain the information [*Id.*].

However, the only relevant testimony in the record about this issue came from Petitioner's trial counsel, who specifically and repeatedly testified that he discussed the discovery materials on the compact discs with Petitioner [Doc. 11-18 p. 25–27, 54–55]. Moreover, Petitioner has not specified what, if any, information he could have provided to counsel prior to trial regarding the discovery on the compact discs that would have changed the result of the trial.

As such, Petitioner has not established that his counsel was deficient with regard to showing discovery materials to him or that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented, and he is not entitled to relief under § 2254 for this claim.

### f. Cumulative Error

In his last exhausted claim regarding ineffective assistance of counsel, Petitioner claims that the cumulative effect of his trial counsel's errors entitles him to habeas corpus relief [Doc. 1 p. 33]. However, "[t]he Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." *Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) (citing *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)). Moreover, the Court has not found that any of Petitioner's ineffective-assistance-of-counsel claims have any merit, and where "individual claims are all essentially meritless, [a petitioner] cannot show that the cumulative error[s] violated his constitutional rights." *Keith v. Mitchell*, 455 F.3d 662, 679 (6th Cir. 2006) (citing *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)). Accordingly, Petitioner is not entitled to relief under § 2254 on this claim.

### C. Subpoenas to Post-Conviction Evidentiary Hearing

Petitioner's last claim for habeas corpus relief is that the post-conviction court's failure to allow him to subpoena witnesses to the evidentiary hearing violated his right to due process, and the TCCA unreasonably affirmed that decision [*Id.* at 38]. However, it is well-established that a writ of habeas corpus "is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings . . . because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986). Accordingly, the Sixth Circuit Court of Appeals "'has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review.'" *Mendenhall v. Parris*, No. 16-6003, 2017 WL 2819225, at *4 (6th Cir. Feb. 22, 2017) (quoting *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007)). Thus, this claim is not cognizable under § 2254.

### III. CONCLUSION

For the reasons set forth above, Petitioner's requests for § 2254 relief will be **DENIED** and this action will be **DISMISSED**.

The Court must now consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists would not debate the Court's finding that Petitioner procedurally defaulted his claims for ineffective assistance of counsel that he did not raise to the TCCA in his appeal of the denial of his petition for post-conviction relief. Further, reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to his claim challenging the sufficiency of the evidence, his exhausted claims for ineffective assistance of counsel, or his claim regarding subpoenas at the evidentiary hearing for his petition for post-conviction relief, such that they would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

24

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**